UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

IVAN SALAZAR-LOPEZ, *et al.*,

Petitioners,

v.

KRISTI NOEM, *et al.*,

Respondents.

Case No. 2:26-cv-00871-RFB-MDC

ORDER GRANTING WRIT OF HABEAS CORPUS

Before the Court is Petitioners Ivan Salazar-Lopez and Pedro Ramirez-Dircio's Petition for Writ of Habeas Corpus, which they filed pursuant to 28 U.S.C. § 2241. See generally ECF No. 1 [hereinafter, "Petition"]. Through it, they challenge the lawfulness of their ongoing detention at Nevada Southern Detention Center ("NSDC") in the custody of Immigration and Customs Enforcement ("ICE"). Specifically, Respondents are detaining Petitioners without providing them an opportunity for release on bond, as Respondents assert that they are subject to 8 U.S.C. § 1225(b)(2)(A). See ECF Nos. 7 at 2; 8 at 2 [hereinafter "Oppositions"]. Petitioners argues that their detention violates: (i.) the Immigration and Nationality Act ("INA"); (ii.) the procedural component of the Fifth Amendment's Due Process Clause; and (iii.) the substantive component of the Fifth Amendment's Due Process Clause. See Petition at 8–10.

In turn, Respondents invoke their novel statutory interpretation of § 1225(b)(2)(A) to justify Petitioners' detention. See generally Opposition. This Court is well acquainted with Respondents' interpretation of the INA, as the Court has repeatedly rejected it as unlawful. See, e.g., Ramirez v. Mullin, No. 2:25-cv-02136-RFB-MDC, 2026 U.S. Dist. LEXIS 67643, at *99 (D. Nev. Mar. 30, 2026) (collecting cases). In fact, the Court recently granted relief on this precise issue in a related class-action that is inextricably intertwined with this case. Specifically, the Court:

(i.) declared that Respondents' interpretation is wrong; (ii.) declared that members of the Ramirez Class are entitled to a bond hearing under 8 U.S.C. § 1226(a); and (iii.) vacated Respondents' related policies—namely, the Board of Immigration Appeals's decision in Matter of Yajure Hurtado, 29 I. & N. Dec. 216 (BIA 2025) [hereinafter "Hurtado"]. See id. at 95–97. As discussed below, the Court finds that Petitioners are members of the Ramirez Class; therefore, their ongoing detention in the absence of a bond hearing is statutorily, and constitutionally, unlawful. Thus, the Court grants Petitioners a writ of habeas corpus and orders Respondents to supply them with prompt bond hearings; alternatively, Respondents may immediately release them from custody.

The Court makes the following findings of fact based on the Parties' undisputed factual allegations and the evidence they supply. See Carlson v. Landon, 186 F.2d 183, 188 (9th Cir. 1950). Petitioner Salazar-Lopez is a 34-year-old citizen of Mexico who entered the country without inspection, admission, or parole in November 1991 when he was only four months old; he has never departed the United States since and has lived his entire life here. See Petition at 6; see also ECF No. 6-1 (Petitioner Salazar-Lopez's Record of Inadmissibility/Deportability—i.e., I-213) [hereinafter, "SL I-213"]. On February 24, 2026, Mr. Salazar-Lopez was detained by ICE in Las Vegas, Nevada, pursuant to an immigration detainer lodged by the Las Vegas Metropolitan Police Department ("LVMPD"), as LVMPD had arrested him on suspicion of domestic battery. See SL I-213 at 3. When Mr. Salazar-Lopez was detained by ICE, the Department of Homeland Security ("DHS") issued him a Notice to Appear ("NTA"), commencing removal proceedings against him under § 1229a and charging him with, inter alia, being present in the United States without admission or parole and therefore removable under 8 U.S.C. § 1182(a)(6)(A)(i), as someone who entered the United States without inspection. See ECF No. 6-2 (SL Notice to Appear). Mr. Salazar-Lopez has been detained by Respondents at NSDC without an opportunity for release on bond since. See Petition at 11–12.

Petitioner Ramirez-Dircio is a 38-year-old citizen of Mexico and resident of Park City and Summit County, Utah who entered the country without inspection, admission, or parole in or around 2004. See Petition at 6; see also ECF No. 6-4 (Petitioner Ramirez-Dircio's Record of

Inadmissibility/Deportability—*i.e.*, I-213) [hereinafter, "RD I-213"]. On February 5, 2026, Mr. Ramirez-Dircio was detained by ICE from the Summit County Jail, though there is no indication that he was charged with a crime of any kind. See generally RD I-213 at 3. When Mr. Ramirez-Dircio was detained by ICE, the Department of Homeland Security ("DHS") issued him a Notice to Appear ("NTA"), commencing removal proceedings against him under § 1229a and charging him with, *inter alia*, being present in the United States without admission or parole and therefore removable under 8 U.S.C. § 1182(a)(6)(A)(i), as someone who entered the United States without inspection. See ECF No. 6-5 (RD Notice to Appear). Mr. Ramirez-Dircio has been detained by Respondents at NSDC without an opportunity for release on bond since. See Petition at 13; see also ECF No. 6-6 (IJ Order denying Petitioner Ramirez-Dircio release on bond for lack of jurisdiction under Hurtado).

Based on these facts, the Court finds Petitioners are members of the Ramirez class and are therefore entitled to a bond hearing and other procedural protections under the proper detention authority: 8 U.S.C. § 1226(a).

In addition, Petitioners raise an as applied constitutional challenge to Respondents' detention policy under § 1225(b)(2)(A). The Court incorporates by reference the legal authorities and standards set forth in Escobar Salgado regarding the due process rights of noncitizens in Petitioners' position; as before, the Court rejects Respondents' extreme interpretation of Dep't of Homeland Security v. Thuraissigiam, 591 U.S. 103 (2020)—*i.e.*, that *all* undocumented noncitizens who are present in this country are not entitled to due process under the Constitution. See Escobar Salgado, 2025 WL 3205356, at *22–24; see also generally Padilla v. U.S. Immigr. and Customs Enf't, 704 F. Supp. 3d 1163 (W.D. Wash. 2023). To date, Respondents have not asserted that these Petitioners are either dangerous or a flight risk. See generally Oppositions; cf. also Zadvydas v. Davis, 533 U.S. 678, 690 (2001) (explaining that the only legitimate, narrow, non-punitive justifications for civil immigration detention are two regulatory goals: (1) to "ensure[ ] the appearance of [noncitizens] at future immigration proceedings" and (2) to "prevent[ ] danger to the community."). Consistent with its prior decisions, the Court finds that Respondents' civil detention of Petitioners violates their procedural and substantive due process rights; after all,

they have not been afforded *any* process which could ensure that their detention is supported by individualized, constitutional justifications. See Escobar Salgado, 2025 WL 3205356, at *22–24.

Indeed, as a result of Respondents' unlawful mandatory detention policy, Petitioners have been deprived of "substantial" procedural protections that they are entitled to under 8 U.S.C. § 1226(a) and its implementing regulations. See Rodriguez Diaz v. Garland, 53 F.4th 1189, 1196 (9th Cir. 2022). First, based on the evidence and representations submitted to this Court, these petitioners were arrested without administrative warrants that were authorized, signed, and served by designated supervisory immigration officials—as required by § 1226(a) and its implementing regulations. See 8 U.S.C. § 1226(a); 8 C.F.R § 236.1(b) (providing that a noncitizen who is in removal proceedings "may be arrested and taken into custody under the authority of Form I-200, *Warrant of Arrest*") (emphasis added); 8 C.F.R. § 287.8(c)(2)(ii) (stating that "[a] warrant of arrest *shall be obtained*" except in the limited circumstances where a warrantless arrest is authorized) (emphasis added); see also § 287.5(e)(2)–(3) (listing the fifty-three categories of immigration officials who may issue an arrest warrant for immigration violations, so long as the issuing official has been authorized or delegated such authority and eight categories of officials who are permitted to serve I-200 warrants so long as they have "successfully completed basic immigration law enforcement training"). And Respondents have not asserted that Petitioners' warrantless arrests were permissible under the only potentially-applicable warrantless arrest provision, *i.e.*, they have not asserted the arresting officers "had reason to believe" that the petitioners were "in the United States in violation of" immigration laws and "likely to escape before a warrant [could] be obtained." 8 U.S.C. § 1357(a)(2); see also 8 C.F.R. § 287.8(c)(2)(ii) ("A warrant of arrest shall be obtained except when the designated immigration officer has reason to believe that the person is likely to escape before a warrant can be obtained.").

Second, Petitioners were deprived of an "initial custody determination" by ICE, where they each would have had the opportunity to obtain release on bond, or conditional parole, by demonstrating "that such release would not pose a danger to property or persons, and that [he] is likely to appear for any future proceeding." Rodriguez Diaz, 53 F.4th at 1196 (citing 8 C.F.R. § 236.1(c)(8)). Third, Petitioners have been deprived of an opportunity to seek review of that initial

custody determination through a "prompt bond hearing" before an immigration judge, which could be appealed to the BIA, and—to the extent the denial of bond was legally erroneous or an abuse of discretion—which would be subject to judicial review in habeas corpus proceedings. See id. at 1210; see generally Martinez v. Clark, 124 F.4th 775 (9th Cir. 2024). In short, § 1226(a) supplies various procedural protections to guard against unlawful detention. Unfortunately, Petitioners have not been afforded any of them.

As such, the Court finds that Petitioners are subject to a constitutionally intolerable risk of arbitrary, erroneous, prolonged detention. Under these circumstances—which are infected with statutory, regulatory, and due process violations—the typical procedures governing bond hearings are insufficient to safeguard our Constitution's guarantee of due process. Instead, the Court concludes that the appropriate remedy is a bond hearing where the burden to justify Petitioners' detention is shifted to the government. Cf. Burnett v. Lampert, 432 F.3d 996, 999 (9th Cir. 2005) ("Federal courts have a fair amount of flexibility in fashioning specific habeas relief."). This remedy will directly address "the risk of error inherent in the truthfinding process," Mathews, 424 U.S. 319, 344 (1976), which has only been exacerbated by Respondents' disregard for longstanding procedures, which they themselves developed—and generally adhered to—until now.

The Court thus orders Respondents to conduct bond hearings for Petitioners under § 1226(a), and its implementing regulations, wherein the government must prove, by clear and convincing evidence, that each Petitioner's civil detention is justified by an individualized, constitutionally recognized interest—i.e., that his detention is necessary to prevent danger to the community or to ensure his future appearance at removal proceedings. Cf. Singh v. Holder, 638 F.3d 1196, 1203 (9th Cir. 2011) ("Given the substantial liberty interest at stake . . . we hold that the government must prove by clear and convincing evidence that [a noncitizen] is a flight risk or a danger to the community to justify denial of bond."), abrogation on statutory grounds recognized by Rodriguez Diaz v. Garland, 53 F.4th 1189 (9th Cir. 2022); Martinez v. Clark, 124 F.4th 775, 785 (9th Cir. 2024) ("[T]he BIA properly noted that the government bore the burden to establish by clear and convincing evidence that [a detained noncitizen] is a danger to the community").

- 5 -

In considering the evidence, the IJ must "weigh[ ] nine factors under BIA precedent." Martinez, 124 F.4th at 793 (citing In Re Guerra, 24 I&N Dec. 37 (BIA 2006)).[1] If there is any doubt the government has conclusively proven dangerousness or flight risk, the immigration court must consider each Petitioner's financial circumstances as well as possible alternative release conditions in setting bond. See Hernandez v. Sessions, 872 F.3d 976, 990 (9th Cir. 2017). The immigration court must further create a contemporaneous record of the bond hearing that is available to each Petitioner upon request, see Singh, 638 F.3d at 1208, and that is available to this Court so that it can ensure the immigration court's compliance with this Order—i.e., the application of the correct evidentiary burden; the application of the correct evidentiary standard; and sound findings regarding danger and flight risk which do not amount to an abuse of discretion. See Martinez, 124 F.4th at 779 (holding federal district courts have habeas jurisdiction to determine whether the appropriate evidentiary burden and evidentiary standard is applied in a bond hearing de novo, as a "question of law," and to review an IJ's dangerousness finding for abuse of discretion, as a "mixed question of law and fact") (citing Wilkinson v. Garland, 601 U.S. 209 (2024)).

Consistent with its broad equitable authority to fashion a remedy for unlawful detention "as law and justice require," and considering the constitutional injury these Petitioners have suffered and continue to suffer due to Respondents' continued enforcement of unlawful detention policies, the Court orders Respondents to provide each Petitioner a bond hearing promptly—i.e., no later than **April 7, 2026** for Petitioner Ramirez-Dircio and no later than **April 10, 2026** for Petitioner Salazar-Lopez—or immediately release him from custody on his own recognizance with no substantial constraints on his liberty. See Sanders v. Ratelle, 21 F.3d 1446, 1461 (9th Cir. 1994) ("A federal court is vested with the largest power to control and direct the form of judgment to be entered in cases brought up before it on habeas corpus. The court is free to fashion the remedy as

---

[1] These factors include "(1) whether the alien has a fixed address in the United States; (2) the alien's length of residence in the United States; (3) the alien's family ties in the United States, and whether they may entitle the alien to reside permanently in the United States in the future; (4) the alien's employment history; (5) the alien's record of appearance in court; (6) the alien's criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses; (7) the alien's history of immigration violations; (8) any attempts by the alien to flee prosecution or otherwise escape from authorities; and (9) the alien's manner of entry to the United States." Martinez, 124 F.4th at 793 (citing Guerra, 24 I. & N. Dec. at 40).

law and justice require[.]") (internal quotation marks and citations omitted).

Based on the foregoing **IT IS HEREBY ORDERED** the Petition for Writ of Habeas Corpus (ECF No. 1) is **GRANTED**.

**IT IS FURTHER ORDERED** that Respondents must provide each Petitioner with a constitutionally adequate bond hearing pursuant to 8 U.S.C. § 1226(a), where the government bears the burden of establishing dangerousness or flight risk by clear and convincing evidence, and consistent with the other requirements described above, no later than **April 7, 2026** for Petitioner Ramirez-Dircio and no later than **April 10, 2026** for Petitioner Salazar-Lopez.

**IT IS FURTHER ORDERED** that if bond is granted, Respondents are **ORDERED** to **IMMEDIATELY RELEASE** the Petitioner from detention. The Court has received notice of the hardship other petitioners have incurred in their efforts to satisfy bond through ICE payment portals, and, therefore, **IT IS FURTHER ORDERED** that Petitioners be afforded until **May 9, 2026,** to satisfy any monetary bond conditions.

**IT IS FURTHER ORDERED** that Respondents are **PERMANENTLY ENJOINED** from invoking 8 C.F.R. § 1003.19(i)(2) to continue either Petitioner's detention, as the Court has already found that the regulatory automatic stay is facially unconstitutional and adopts that finding here. See generally Herrera v. Knight, 798 F. Supp. 3d 1184 (D. Nev. 2025).

**IT IS FURTHER ORDERED** that if a constitutionally adequate bond hearing is not conducted by the aforementioned dates as to either Petitioner, Respondents must **IMMEDIATELY RELEASE** Petitioner from custody on his own recognizance. This means Respondents are **PROHIBITED** from imposing release conditions that substantially interfere with each Petitioner's liberty, such as electronic monitoring, without having established the reasonableness of those restrictions, by clear and convincing evidence, at a pre-deprivation hearing

**IT IS FURTHER ORDERED** that Respondents are **PERMANENTLY ENJOINED** from detaining either Petitioner during the pendency of his current removal proceedings unless and until it is determined that his detention is warranted under § 1226(a) after a constitutionally adequate bond hearing.

**IT IS FURTHER ORDERED** that Respondents are **PERMANENTLY ENJOINED**

from detaining either Petitioner pursuant to 8 U.S.C. § 1225(b)(2)(A).

**IT IS FURTHER ORDERED** that the Parties shall file a joint status report by **April 13, 2026**. The status report shall detail whether the ordered bond hearings occurred, whether bond was granted or denied, and, if denied, the reasons for that denial. If bond was granted or the bond hearing has not occurred, the status report shall confirm the date and time of Petitioners' release from detention in compliance with this Order.

**IT IS FURTHER ORDERED** that if bond is denied as to either Petitioner, Federal Respondents must (1) **ATTACH** the order of the immigration court to the joint status report AND (2) **PROVIDE** the contemporaneous record of the bond hearing to Petitioners' counsel **IMMEDIATELY** upon request.

Finally, pursuant to Federal Rule of Civil Procedure 25(d), **IT IS FURTHER ORDERED** that the current Secretary of Homeland Security—Markwayne Mullin—is **SUBSTITUTED** for Respondent Kristi Noem. The Clerk of Court is kindly instructed to update the docket accordingly.

The Clerk of Court is further instructed to enter judgment accordingly and close this case. The Court retains jurisdiction to enforce its order and judgment. Petitioner may move to reopen this case to enforce the judgment without filing a separate case. The Court also retains jurisdiction to consider Petitioner's request for fees and costs pursuant to 28 U.S.C. § 2412. Petitioner may file an application for fees and costs consistent with the deadlines and requirements set forth in 28 U.S.C. § 2412 and this Court's Local Rules of Practice 54-1 and 54-14.

**DATED:** April 6, 2026.

_____
**RICHARD F. BOULWARE, II**
**UNITED STATES DISTRICT JUDGE**

- 8 -